JUDGE BAER

10 CV 455

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600 / Fax: (516) 767-3605
Eugene J. O'Connor (EO-9925)
Timothy Semenoro (TS-6847)
Andrew J. Warner (AW-5534)

RECEIVED
JAN 20 2010
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

COSCO BULK CARRIER CO. LTD.,

Plaintiff,

v.

RASHMI METALIKS LTD., and STATE BANK OF INDIA,

Defendants.

---------------------------------------------------------------X

10 CV ___________

**VERIFIED COMPLAINT**

Plaintiff COSCO Bulk Carrier Co. Ltd.. (hereinafter "COSBULK") by its attorneys, as and for its Verified Complaint against the Defendants Rashmi Metaliks Ltd.. (hereinafter "RASHMI") and State Bank of India (hereinafter "SBI"), alleges upon information and belief as follows:

JURISDICTION AND VENUE

1. The Court has jurisdiction pursuant to 9 U.S.C. § 201, *et seq.* and 28 U.S.C. § 1332 based on diversity of citizenship of the parties. The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

2. At all times relevant hereto, RASHMI has been registered to do business in the State of New York with the New York Department of State.

3. At all relevant times hereto, SBI was a banking institution conducting the business of banking and financial service and supplying goods and services, commercial or

otherwise, within the State of New York, pursuant to the laws of the United States and the laws of the State of New York.

4. SBI is registered with the State of New York Banking Department, which lists an address of 460 Park Avenue, New York, New York 10022, in the Banking Department's "Institutions We Supervise, Foreign Branches" listing.

THE PARTIES

5. At all times material hereto, Plaintiff COSBULK was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country with an office and principal place of business in China.

6. At all times material hereto, Defendant RASHMI was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country with an office at Premlata Building 39, Shakespeare Sarani, Kolkata - 700017.

7. At all times material hereto, Defendant SBI was and is a foreign business entity duly organized and existing pursuant to the laws of a foreign country with an address and place of business at 460 Park Avenue @ 57th St., 2nd Floor, New York, NY 10022.

AS A CAUSE OF ACTION TO RECOGNIZE THE FOREIGN ARBITRATION AWARD

8. On or about January 21, 2009, COSBULK, as disponent owner, entered into a maritime contract with RASHMI as charterer, for the use of vessel the M/V CLEAN SEAS for a voyage from Paradip/Vizag, India to a port in China.

9. The maritime contract between COSBULK and RASHMI is in the form of a standard GENCON 94 charter party form with incorporated rider clauses (hereinafter "the maritime contract"). A copy of the maritime contract is attached hereto as Exhibit A.

10. The terms and conditions of the maritime contract provided that RASHMI would be liable for any demurrage incurred during the voyage, and that any and all disputes arising between the parties were subject to arbitration in London.

11. During the performance of the maritime contract, a dispute arose between the parties arising out of the charter, and COSBULK claimed $144,010.15 in demurrage was owed by RASHMI.

12. Pursuant to the maritime contract, COSBULK commenced arbitration in London, and served claim submissions. Despite being served with the claim submissions, a first Order, and a Final and Peremptory Order, RASHMI failed to serve any defense submissions. All formalities were observed in the London arbitration.

13. On July 3, 2009, COSBULK received an Award finding that RASHMI should pay COSBULK the sum of $144,070.15, plus costs of $8,780.00 and interest to be calculated at 2.5% per annum compounded quarterly. A copy of the award is attached hereto as Exhibit B.

14. Moreover, under the terms of the Arbitration Award, RASHMI must pay the arbitrators fees and expenses of £2,000.00 (US $3,265.00). If COSBULK has paid any of this amount, COSBULK is entitled to a refund from RASHMI.

15. In total, RASHMI is liable to COSBULK for the total sum of $159,972.38.

16. The arbitral award rendered in this matter was made in London, England, and therefore is not a domestic award in the State of New York. Accordingly, the arbitral Award is subject to recognition and enforcement under the New York Convention for the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention").

17. The arbitral award arises out of a commercial relationship.

18. The parties are not both citizens of the United States.

19. Upon submission of the duly authenticated award, and original agreement to arbitrate, this Court must recognize and enforce the foreign arbitral award if the request for confirmation is made within three (3) years after the arbitral award is made.

20. The request for confirmation of the arbitral award is timely.

21. Accordingly, COSBULK respectfully submits that the Award is subject to recognition and is enforceable pursuant to the New York Convention and should be recognized and confirmed as a judgment of this Court.

AS FOR A CAUSE OF ACTION AGAINST SBI
TO TURNOVER ASSETS IN ITS POSSESSION

22. Plaintiff COSBULK repeats and reiterates the allegations contained in paragraphs one (1) through twenty-one (21).

23. Plaintiff COSBULK has submitted an arbitral Award for recognition by this Court.

24. Pursuant to CPLR § 5018, COSBULK's money judgment, when issued, is subject to enforcement by this Honorable Court.

25. Pursuant to CPLR §§ 5222, 5224, 5225, 5227, and/or other applicable sections of the CPLR, COSBULK will serve its Subpoena and Restraining Notice upon Defendant SBI as garnishee of judgment debtor RASHMI's property.

26. COSBULK's Restraining Notice pursuant to CPLR § 5222 restrains such garnishees from transferring or allowing to be transferred any and all property in which RASHMI may have an interest, and over which SBI exercises possession or control, whether such property is located within or outside the State of New York, and that any branch of SBI, wherever located, shall comply with such Restraining Notice.

27.    Pursuant to COSBULK's Subpoenas and CPLR § 5224, garnishee bank SBI shall promptly answer the Subpoena served upon its New York place of business and thus inform COSBULK as to the property of RASHMI which it holds, the location of such property, and the details of such property, whether such property is found within or without the State of New York.

28.    Upon information and belief, plaintiff COSBULK is already aware that defendant RASHMI utilizes SBI to transfer funds, and maintains a bank account with SBI. A redacted copy of a wire transfer receipt is attached hereto as Exhibit C. The full account details are known, however are redacted in accordance with Federal Rule of Civil Procedure 5.2.

29.    Pursuant to CPLR § 5225(b), this Court may Order a garnishee in possession of property of a judgment debtor to turn over such property to a judgment creditor in satisfaction of the debt. Further, a Court may Order a garnishee which is in possession of property of a judgment debtor, the location of which is outside New York State to bring such property into the jurisdiction of the Court in order to satisfy the debt.

30.    Pursuant to CPLR § 5227, the Court may Order a person who is or will become indebted to the judgment debtor to pay to the judgment creditor the debt upon maturity, and may further order that party to execute and deliver any document necessary to effect payment; and the Court may direct that a judgment be entered against such person in favor of the judgment creditor.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

A.    That this Court recognize and enforce the foreign arbitral award entered by the London arbitrator against defendant RASHMI on July 3, 2009;

B.    That this Court pursuant to CPLR § 5225(b) and 5227, Order that SBI turn over such property of defendant RASHMI as may be in its possession, that property of RASHMI within the possession of SBI but located outside the State of New York be Ordered brought into the State, and that such property be turned over to plaintiff COSBULK in satisfaction of the New York Judgment up to and including the sum of US $159,972.38.

C.    That this Court issue an Order pursuant to CPLR 5225(c) and 5227 that SBI be ordered to execute and deliver any document necessary to effect payment or delivery of property of RASHMI to plaintiff COSBULK up to and including the sum of US $159,972.38.

D.    That this Court, pursuant to CPLR 5222(i), relieve COSBULK of compliance with that provision and thus allow attachment of all property of RASHMI, as the protection of CPLR 5222(i) is unnecessary for the reasonable requirements of RASHMI.

E.    That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to a further order compelling additional Respondents and/or garnishees found to be within the jurisdiction of this Court and in possession of property of RASHMI to turn over such property, wherever located, in order to satisfy the debt of RASHMI owed to COSBULK.

F.    That Plaintiff has such other and further relief as the Court may determine to be just and proper under the circumstances.

Dated: Port Washington, New York
January 20, 2010

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff

By: ______________________

Eugene J. O'Connor (EO-9925)
Timothy Semenoro (TS-6847)
Andrew J. Warner (AW-5534)
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600 / Fax: (516) 767-3605

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600 / Fax: (516) 767-3605
Eugene J. O'Connor (EO-9925)
Timothy Semenoro (TS-6847)
Andrew J. Warner (AW-5534)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

COSCO BULK CARRIER CO. LTD.,

Plaintiff,

v.

RASHMI METALIKS LTD., and STATE BANK OF INDIA,

Defendants.

--------------------------------------------------------------X

10 CV __________

**VERIFICATION OF COMPLAINT**

Pursuant to 28 U.S.C. § 1746, ANDREW J. WARNER, Esq., declares under the penalty of perjury:

1. I am associated with the law firm of Chalos, O'Connor & Duffy, attorneys for the Plaintiff COSCO BULK CARRIER CO. LTD., herein;

2. I have read the foregoing complaint and know the contents thereof; and

3. I believe the matters to be true based on documents and information obtained from employees and representatives of the Plaintiff through its underwriters and attorneys. The reason that this verification was made by deponent and not by the Plaintiff is because Plaintiff is a foreign corporation, whose officers are not in this district, and whose verification cannot be obtained within the time constraints presented by the circumstances of this case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Port Washington, New York
January 20, 2009

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff

By: ______________________________

Andrew J. Warner (AW-5534)
366 Main Street
Port Washington, New York 11050
Tel: (516) 767-3600 / Fax: (516) 767-3605

# EXHIBIT A

Attachment No. 1

---

发件人: Michael [mailto:chartering@stardragon.biz]
发送时间: 2009年1月21日 17:40
收件人: 刘冬
抄送: 'STARDRAGON'
主题: RE : MV "CLEAN SEAS" / ACC RASHMI METALIKS LTD - C/P DTD 21.01.2009

FM: STAR DRAGON SHIPPING LTD.
E-MAIL: CHARTERING@STARDRAGON.BIZ
---------------------------------

MR.LIUDONG/MICHAEL
GOOD DAY

THANK YOU VERY MUCH FOR YOUR SUPPORT

RE : MV "CLEAN SEAS" / ACC RASHMI METALIKS LTD - C/P DTD 21.01.2009
==

PLSD TO RECAP CLEAN FIXTURE WITH CP DTD JAN 21TH 2009 ASF:

**=ALL NEGOS AND EVENTUAL FIXTURE TO BE KEPT STRICTLY CONFIDENTIAL AND NOT TO BE DISCLOSED TO ANYBODY=**

MV CLEAN SEAS
SD BC GEARED BULKCARRIER
BUILT JUN 1995 FLAG CAYMAN ISLANDS CLASS NKK
SDWT 46,640 MT / SDFT 11.62 MTRS
GRT 27,011 / NRT 16,011
L/B: 189.8/31 MTRS TPC 51.49 5H/5H
CAPE: G/B 59,820.4/57,236.7CBM
CRANES 4 X 30 T ELECTRO HYDRAULIC

SPEED AND CONSUMPTION:
LADEN : ABT 13.50 KN ON ABT 28 MT IFO MAX 380 CST + ABT 0.1 MT MDO
BALLAST : ABT 13.50 KN ON ABT 27 MT IFO MAX 380 CST + ABT 0.1 MT MDO
PORT CONSUMPTION: WORKING: 24 HRS: ABT 5.0 MT IFO AND ABT 0.L MT MDO
IDLE: ABT 3.5 MT IFO AND ABT 0.1 MT MDO
BUNKER SPECS: IFO RMG 380 (ISO 8217:2005 E)
MDO / DMB (ISO 8217:2005 E)
ALL DTLS ABT

++

- VSLS CRANE OUTREACH FROM SHIP'S SIDE : 10.5 MTRS FM SHIP'S
RAILING
- CLASS / PNI CERT : NKK / GARD
- OWNS TO GUARANTEE VSL FULLY P&I CLUB COVERED AND VESSEL'S
P&I CLUB
  IS MEMBER OF INTERNATIONAL GROUP OF P&I CLUBS (IACS) AND
OWNS
  GUARANTEE THAT THE VESSEL'S CLASS IS A MEMBER OF IACS AND
WILL
  REMAIN SO THRU DURATION OF THIS CHARTER PARTY (.)

AND

1) NAME OF HEAD OWNERS : EXPLORER SHIP HOLDING LTD
2) NAME OF MANAGERS : N/A
3) NAME OF DISPONENT / TIME CHARTER OWNERS :COSCO BULK CARRIER
CO., LTD.
4) NAME OF HULL UNDERWRITERS & HULL MACHINERY VALUE : H&M VALUE
61M USD
5) NAME OF P&I CLUB : GARD
6) FULL C/P CHAIN : EXPLORER SHIPHOLDING LTD / COSBULK

1) ACCOUNT - RASHMI METALIKS LTD

2) CARGO & QUANTITY - 45000 / 5 % MOLOO IRON ORE FINES
   [VSL TO LOAD MAX QTY AT HALDIA UPTO AVLBLE SLG DRFT THEN
BAL NEXT PORT,

3) LOAD PORT: 1/2SB 1SP AAAA HALDIA + 1/2SB 1SP AAAA
PARADIP/VIZAG, ECI INCHOPT.

4) DISCHARGE PORT - 1/2SB 1SP AAAA, ANY MAIN PORT CHINA,
INCLDNG RIVER PORT,
   BUT CHRTRS GUNRANTEE NO DRAFT RESTRICTION BENDS.
   ACTUAL DISCHARGE PORT TO BE CONFIRMED AFTER VESSEL PASSING
SINGAPORE.

5) LOAD RATE - 6000 MT PWWD SHINC AT HALDIA
              7500 MT PWWD SHINC AT PARADIP/VIZAG

6) DISCHARGE RATE - 12000 MT PWWD SHINC CHINA

7) LAYCAN: 0001LT. 25 - 30 JAN 2009, TURN TIME 12 HRS AT ALL
PORTS.

8) NOTICE OF READINESS AT LOADPORT AND DISCHARGE PORT CAN BE
TENDRED BY
   MASTER THROUGH CABLE OR IN WRITING TO THE AGENTS AND/OR
SHIPPER AND
   IMPORTERS RESPECTIVELY WITHIN OFFICE HOURS I.E BETWEEN
0900-1700, MON

TO FRI AND 0900-1200H ON SAT, SUNDAYS & HOLIDAYS EXCLUDED, ON SHIPS
ARRIVAL 1ST SEA PILOT STATION ALL THE PORTS AT BOTH ENDS WIPON, WIBON,
WCCON, WIFPON.

(A) CARGO TO BE LOADED AT THE RATE OF 6000 MT AND 7500 MT PER WEATHER
WORKING DAY OF 24 CONSECUTIVE HOURS SUNDAYS HOLIDAYS INCLUDED AT HALDIA
AND PARADIP/VIZAG RESPECTIVELY. LOAD RATE IS ON THE BASIS OF 4 HOOKS/SHIP'S
CRANES. IN CASE OF BREAKDOWN OF SHIP'S CRANE'S LAYTIME SHALL BE CALCULATED
ON PRO-RATA BASIS THE NUMBER OF CRANES. OWNERS MAY HIRE SHORE CRANE/S IN
LIEU OF DISABLED CRANE/S AT OWNERS COST WHICH CASE FULL LAYTIME TO COUNT.
(B) CARGO TO BE DISCHARGED AT THE RATE OF 12,000 MT PER WEATHER WORKING DAY
OF 24 CONSECUTIVE HOURS SUNDAYS HOLIDAYS INCLUDED. DISCHARGE RATE IS ON
THE BASIS OF 4 HOOKS/SHIP'S CRANES. IN CASE OF BREAKDOWN OF SHIPS CRANE/S
LAYTIME SHALL BE CALCULATED ON PRO-RATA BASIS THE NUMBER OF CRANES. OWNERS
MAY HIRE SHORE CRANE/S IN LIEU OF DISABLED CRANE/S AT OWNERS COST WHICH
CASE FULL LAYTIME TO COUNT.
(C) INCASE OF HALDIA, IF THE VESSEL SERVES NOR AFTER COMPLETION OF DISCHARGE
OF IMPORT CARGO AND IS NOT SENT OUT TO SANDHEADS, TIME TAKEN FOR SHIFTING
FROM DISCHARGING BERTH TO REBERTHING AT LOADING BERTH NOT TO COUNT AS
LAYTIME.
(D) IN CASE THE DISCHARGE PORT IS YANGTZE RIVER PORT, NOTICE OF READINESS TO
BE TENDERED AND ACCEPTED AT CHANGJIANGKOU (CJK) TIME USED FOR SHIFTING FROM
CJK TO FINAL DISCHARGE PORT(S) SUCH AS ZHENJIANG OR JIANGYIN BERTH (INCLUDING
CHANGING PILOT AND LIMITATION FOR NIGHT NAVIGATION) SHALL NOT BE COUNTED AS
LAYTIME.
(E) SHIFTING TIME FROM ANCHORAGE TO BERTH NOT TO COUNT AS LAYTIME OR TIME ON
DEMURRAGE.
(F) TIME TAKEN FOR INITIAL DRAFT SURVEY AND CUSTOM CLEARANCE NOT TO COUNT AS
LAYTIME AT BOTH ENDS PROVIDED LOADING/DISCHARGING IS

AFFECTED. TIME LOST IN WAITING FOR ANY DRAFT SURVEY TO COUNT AS LAYTIME OR TIME ON DEMURRAGE.

(G) IN CASE LOADING HAS TO BE INTERRUPTED DUE TO REASON OF RESPONSIBILITY OF THE VESSEL, SUCH TIME LOST NOT TO COUNT AS LAYTIME.

(H) ANY SHIFTING EXPENSES DUE TO OWNER'S / VESSEL'S FAULT ON ONWERS ACCOUNT AND TIME NOT TO COUNT EVEN IF ON DEMMURAGE.

(I) FIRST OPENING AND LAST CLOSING OF HATCHES FOR ALL THE PORTS, NOT TO COUNTED AS LAYTIME.

(J) LAYTIME TO CEASE UPON COMPLETION OF DISCHARGE UNLESS TIME LOST IN WAITING FOR ANY DRAFT SURVEY.

(K) LAYTIME/PRO-RATA LAYTIME NOT TO COUNT FOR THE FOLLOWING, EVEN IF THE VESSEL IS ALREADY ON DEMURRAGE, PROVIDED LOADING/DISCHARGING IS AFFECTED:-

I) STOPPAGE TIME DUE TO BREAKDOWN OF CRANE, NON POWER SUPPLY OR ANY STOPPAGES DUE TO OWNERS/VESSEL'S FAULT

II) TIME TAKEN IN SHIFTING FROM ANCHORAGE TO BERTH

III) TIME TAKEN IN FIRST OPENING AND LAST CLOSING OF HATCH COVERS IF LOADING / DISCHARGING IS AFFECTED

IV) TIME TAKEN FOR INITIAL DRAFT SURVEY AND CUSTOM CLEARANCE AT BOTH ENDS

V) ANY TIME TAKEN LOST DUE TO CREW PROBLEMS AND/OR DEFECT IN OR BREAKDOWN OF CRANES AND OR OF VESSEL, MACHINERY OR EQUIPMENT NOT TO COUNT EVEN IF ON DEMURRAGE, ALL TIME LOST TILL THE VESSEL IS IN SAME POSITION NOT TO COUNT EVEN IF IN ON DEMURRAGE.

9) FREIGHT - USD 10.50 PMT BSS 2/1

10) DEM/DES - USD 6500 PDPR HD WTS BE

11) FREIGHT PAYMENT :(ONE HUNDRED PERCENT ) 100% FREIGHT IS PAYABLE IN US DOLLARS TO OWNER'S NOMINATED BANK ACÇOUNT WITHIN 3 (THREE) BANKING DAYS UPON COMPLETION OF LOADING AND SIGNING/RELEASING BILLS OF LADING MARKED "FREIGHT PAYABLE AS PER C/P" BUT ALWAYS BBB.

IN CASE CHARTERER'S REQUIRE 'FREIGHT PREPAID' BS/L, THEN SAME TO BE

RELEASED IMMEDIATELY UPON RECEIVING 100 PCT FRT IN OWNERS
BANK ACCOUNT.

12) DEMMURAGE / DISPATCH, AT BENDS TO BE SETTLED W/I 15 DAYS
AFTER COMPLETION
    OF DISCH AND UPON RCPT OF ALL RELEVANT DISCHG DOCS.

13) IN THE ABSENCE OF ORIG BS/L UPON VSL'S ARRVL AT DISCH PORT,
CHRS HV THE
    OPTION TO ISSUE SINGLE SIMPLE L.O.I. IN OWS FAVOUR AS PER
OWS PNI CLUB
    WORDING BASED ON WCH OWS SHL ISSUE DELY ORDER. CHTRS TO
ATTACH COPY OF
    B/L ALONGWITH LOI FOR OWNERS APPROVALS.

14) OWNERS TO APPOINT AGENTS NOMINATED BY CHARTERERS AT
LOADING PORT, BUT PORT
    DISBURSEMENT SHOULD BE COMPETITIVE AND CUSTOMARY AND
REASONABLE.
    OWNERS'S AGENTS AT DISCHARGE PORT.

15) CHRTRS ARE FREE TO USE VESSEL'S CRANES DURING THIS C/P.
GRABS HIRE ON CHRTRS
    ACCOUNT.

    VESSEL TO BE SUITABLE FOR GRABS LOADING/DISCHARGING. THE
OWNERS TO GUARANTEE
    THE WORKING OF THE SHIP'S GEAR, CRANES TO FULL CAPACITY
AND THE VESSEL TO
    PROVIDE FULL POWER TO CRANES + GRABS IN ACCD WITH
VSLS/CRANES SPECIFICATION.

16) OWNERS CONFIRM THAT VSLS CRANES/DERRICKS/HATCHES/HOLDS
ARE IN FULLY
    WORKING CONDITION AND ARE SUITABLE FOR
LOADING/DISCHARGING THE INTENDED
    CARGO USING GRABS.

17) VESSELS HOLDS TO BE DRY/CLEAN AND READY TO ACCEPT
CHARTERERS INTENDED
    CARGO BUT ALWAYS SUBJECT INDEPENDENT SURVEYOR. IN CASE
HOLDS NOT APPROVED
    BY SURVEYOR, TIME FROM REJECTION OF HOLDS UNTILL TIME ALL
HOLDS ARE PASSED
    BY THE SURVEYOR, NOT TO COUNT AS LAYTIME (EVEN IF VESSEL
ON DEMURRAGE).

18) IF THE VESSELS DERRICKS / CRANES NOT FOUND TO BE WORKING
TO THEIR CAPACITY,
    THEN AN INDEPENDENT THIRD PARTY ASSESSMENT TO BE DONE TO
ASCERTAIN VESSELS

GEAR EFFECTIVENESS / EFFICIENCY AND LAYTIME COMPUTATION
TO BE DONE ACCORDINGLY.

19) OAP, IF ANY, TO BE ON CHRTRS ACCOUNT.

20) 5 PCT TTL ON F/D/D INCL +1.25 PCT TO STAR DRAGON SHIPPING
LTD AND 1.25 TO CHRTS BROKER ON F/D/D
    CHRTS BROKERAGE TO BE PAID BY CHRTRS AS AND WHEN FREIGHT
IS PAID.

21) ARBITRATION IN LONDON AND ENGLISH LAW TO APPLY.

22) ALL OTHER TERMS AND CONDITIONS AS PER CHRS PROF C/P WITH
LOGICAL APPLICABLE
    AMENDMENTS AS PER MAIN TERM AGREED, INCLUDING FOLLOWING,

= PART II
  CLAUSE 18: TO BE REINSTATED

= PART III
  CLAUSE 30: 1ST LINE DELETE "CLEAN"
  CLAUSE 39: DELETE IN FULL AND TO BE REPLACE AS FOLLOWING
BIMCO STANDARD CLAUSE

  STEVEDORE DAMAGE CLAUSE FOR FIO VOYAGE CHARTER PARTIES 2008

  A) THE CHARTERERS SHALL BE RESPONSIBLE FOR DAMAGE (FAIR WEAR
AND TEAR EXCEPTED)
    TO ANY PART OF THE VESSEL CAUSED BY STEVEDORES. THE
CHARTERERS SHALL BE LIABLE
    FOR ALL COSTS FOR REPAIRING SUCH DAMAGE AND FOR ANY TIME
LOST, WHICH SHALL BE
    PAID IN AN AMOUNT EQUIVALENT TO THE DEMURRAGE RATE.

  (B) THE MASTER OR THE OWNERS SHALL NOTIFY THE CHARTERERS
OR THEIR AGENTS AND
    THE STEVEDORES OF ANY DAMAGE AS SOON AS REASONABLY POSSIBLE,
FAILING WHICH THE
    CHARTERERS SHALL NOT BE RESPONSIBLE.

  (C) STEVEDORE DAMAGE AFFECTING SEAWORTHINESS SHALL BE
REPAIRED WITHOUT ANY DELAY
    BEFORE THE VESSEL SAILS FROM THE PORT WHERE SUCH DAMAGE WAS
CAUSED OR DISCOVERED.
    STEVEDORE DAMAGE AFFECTING THE VESSEL'S TRADING
CAPABILITIES SHALL BE REPAIRED
    BEFORE LEAVING THE LAST PORT OF DISCHARGE, FAILING WHICH
THE CHARTERERS SHALL BE
    LIABLE FOR RESULTING LOSSES. ALL OTHER DAMAGE WHICH IS NOT
REPAIRED BEFORE LEAVING
    THE LAST PORT OF DISCHARGE SHALL BE REPAIRED BY THE OWNERS

AND SETTLED BY THE
  CHARTERERS ON RECEIPT OF OWNERS' SUPPORTED INVOICE.

=END RECAP=


B.RGDS/MICHAEL
DIR: +86 10 8483 3145
FAX: +86 10 8483 3146
MOB: +86 13910899907
MSN: STAR_KING1985@HOTMAIL.COM

1. Shipbroker

INTEROCEAN SHIPPING INDIA (PVT) LIMITED, NEW DELHI

STAR DRAGON SHIPPING LTD

RECOMMENDED THE BALTIC AND INTERNATIONAL MARITIME COUNCIL
UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)
(To be used for trades for which no specially approved form is in force)
CODE NAME: "GENCON" Part I

2. Place and Date
NEW DELHI - 21.01.2009

Printed by BIMCO's idea

2. Disponent Owners Place of business (Cl. 1)

COSCO BULK CARRIER CO., LTD.

4. Charterers' Place of business (Cl. 1)

RASHMI METALIKS LTD, INDIA

5. Vessel's name (Cl. 1)
MV CLEAN SEAS

6. GT/NT (Cl. 1)
27,011 / 16,011

7. DWT all told on summer load line in metric tons (abt.) (Cl. 1)
46,640 MT

8. Present position (Cl. 1)
TRADING

9. Expected ready to load (abt.) (Cl. 1)
LAYCAN AT HALDIA 25 - 30 JAN 2009, TURN TIME 12 HRS AT ALL PORTS.

10. Loading port or place (Cl. 1)
1/2SB 1SP always afloat always accessible HALDIA + 1/2SB 1SP always afloat always accessible Paradip/ Vizag, east coast of India in Charters option.

11. Discharging port or place (Cl. 1)
1/2 Safe Berth 1 Safe Port always afloat always accessible, any main port China, including Yangtze river port, but charterers guarantee no draft restriction both ends. Actual discharge port to be confirmed after vessel passing Singapore.

12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)
45000 / 5 % Moloo iron ore fines
(Vessel will load maximum quantity at Haldia upto permissible draft and top balance quantity at Paradip/ Vizag)

13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4)
USD 10.5000 PMT Free in out basis 2/1.

14. Freight payment (state currency and method of payment; also beneficiary and bank account) (Cl. 4)
SEE RIDER CLAUSE 20

15. State if vessel's cargo handling gear shall not be used (Cl. 5)

16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If total laytime for load and disch., fill in c) only) (Cl. 6)

17. Shippers/Place of business (Cl. 1)
RASHMI METALIKS LTD

(a) Laytime for loading
SEE RIDER CLAUSE 21 & 22

18. Agents (loading)
Charterers' nominated agent

(b) Laytime for discharging
SEE RIDER CLAUSE 21 & 22

19. Agents (discharging)
Owners' agent at discharge Port

(c) Total laytime for loading and discharging

20. Demurrage rate and manner payable (loading and discharging) (Cl. 7)
SEE RIDER CLAUSE 21 & 22

21. Cancelling date (Cl. 9)
LAYCAN AT HALDIA 25 - 30 JAN 2009, TURN TIME 12 HRS AT ALL PORTS.

23. Freight Tax (state if for the Owners' account (Cl. 13 (c))
SEE RIDER CLAUSE 34

22. General Average to be adjusted at (Cl. 12)

25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if 19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl. 19)
SEE CLAUSE 27

24. Brokerage commission and to whom payable (Cl. 15)
5 PCT TTL ON FREIGHT /DEAD FREIGHT /DEMURRAGE INCL 1.25 PCT TO STAR DRAGON SHIPPING LTD AND 1.25 TO CHRTS BROKER ON FREIGHT /DEAD FREIGHT /DEMURRAGE
CHRTS BROKERAGE TO BE PAID BY CHRTRS AS AND WHEN FREIGHT IS PAID.

(a) State maximum amount for small claims/shortened arbitration (Cl. 19)
USD 50,000

26. Additional clauses covering special provisions, if agreed
ADDITIONAL RIDER CLAUSES 20 THROUGH 43 AS ATTACHED ARE DEEMED TO BE INCORPORATED IN THIS CHARTER PARTY

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

........................................
Singature (Owners)

..........................................
Signature (Charterers)
RASHMI METALIKS LTD

# PART II
## "Gencon" Charter (As Revised 1922, 1976 and 1994)

1. It is agreed between the party mentioned in Box 3 as the Owners of the Vessel named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number of metric tons of deadweight capacity all told on summer loadline stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter Party about the date indicated in Box 9, and the party mentioned as the Charterers in Box 4 that:
The said Vessel shall, as soon as her prior commitments have been completed, proceed to the loading port(s) or place(s) stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at the Charterers' risk and responsibility) as stated in Box 12, which the Charterers bind themselves to ship, and being so loaded the Vessel shall proceed to the discharging port(s) or place(s) stated in Box 11 as ordered on signing Bills of Lading, or so near thereto as she may safely get and lie always afloat, and there deliver the cargo.

**2. Owners' Responsibility Clause**

The Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by personal want of due diligence on the part of the Owners or their Manager to make the Vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied, or by the personal act or default of the Owners or their Manager.
And the Owners are not responsible for loss, damage or delay arising from any other cause whatsoever, even from the neglect or default of the Master or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this Clause, be responsible, or from unseaworthiness of the Vessel on loading or commencement of the voyage or at any time whatsoever.

**3. Deviation Clause**

The Vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist Vessels in all situations, and also to deviate for the purpose of saving life and/or property.

**4. Payment of Freight SEE RIDER CLAUSE 20**

~~(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the intaken quantity of cargo.~~
~~(b) *Prepaid.* If according to Box 13 freight is to be paid on shipment, it shall be deemed earned and non-returnable, Vessel and/or cargo lost or not lost. Neither the Owners nor their agents shall be required to sign or endorse bills of lading showing freight prepaid unless the freight due to the Owners has actually been paid.~~
~~(c) *On delivery.* If according to Box 13 freight, or part thereof, is payable at destination it shall not be deemed earned until the cargo is thus delivered. Notwithstanding the provisions under (a), if freight or part thereof is payable on delivery of the cargo the Charterers shall have the option of paying the freight on delivered weight/quantity provided such option is declared before breaking bulk and the weight/quantity can be ascertained by official weighing machine, joint draft survey or tally.~~
~~Cash for Vessel's ordinary disbursements at the port of loading to be advanced by the Charterers, if required, at highest current rate of exchange, subject to two (2) per cent to cover insurance and other expenses.~~

**5. Loading / Discharging**

(a) *Costs/Risks*

The cargo shall be brought into the holds, loaded, stowed and/or trimmed, tallied, lashed and/or secured and taken from the holds and discharged by the Charterers, free of any risk, liability and expense whatsoever to the Owners. The Charterers shall provide and lay all dunnage material as required for the proper stowage and protection of the cargo on board, the Owners allowing the use of all dunnage available on board. The Charterers shall be responsible for and pay the cost of removing their dunnage after discharge of the cargo under this Charter Party and time to count until dunnage has been removed.

(b) Cargo *Handling* Gear

Unless the Vessel is gearless or unless it has been agreed between the parties that the Vessel's gear shall not be used and stated as such in Box 15, the Owners shall throughout the duration of loading/discharging give free use of the Vessel's cargo handling gear and of sufficient motive power to operate all such cargo handling gear. All such equipment to be in good working order. Unless caused by negligence of the stevedores, time lost by breakdown of the Vessel's cargo handling gear or motive power - pro rata the total number of cranes/winches required at that time for the loading/discharging of cargo under this Charter Party shall not count as laytime or time on demurrage. ~~On request the Owners shall provide free of charge cranemen/winchmen from the crew to operate the Vessel's cargo handling gear, unless local regulations prohibit this, in which latter event~~ shore labourers shall be for the account of the Charterers. Cranemen/winchmen shall be under the Charterers' risk and responsibility and as stevedores to be deemed as their servants but shall always work under the supervision of the Master.

(c) Stevedore Damage (SEE RIDER CLAUSE 39)

The Charterers shall be responsible for damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores. Such damage shall be notified as soon as reasonably possible by the Master to the Charterers or their agents and to their Stevedores, failing which the Charterers shall not be held responsible. The Master shall endeavour to obtain the Stevedores' written acknowledgement of liability.
The Charterers are obliged to repair any stevedore damage prior to completion of the voyage, but must repair stevedore damage affecting the Vessel's seaworthiness or class before the Vessel sails from the port where such damage was caused or found. All additional expenses incurred shall be for the account of the Charterers and any time lost shall be for the account of and shall be paid to the Owners by the Charterers at the demurrage rate.

**6. Laytime SEE RIDER CLAUSE 21**

~~* (a) Separate *laytime for loading and discharging*~~
~~The cargo shall be loaded within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.~~
~~The cargo shall be discharged within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.~~
~~* (b) *Total laytime for loading and discharging*~~
~~The cargo shall be loaded and discharged within the number of total running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.~~
~~(c) *Commencement of laytime (loading and discharging)*~~
~~Laytime for loading and discharging shall commence at 13.00 hours, if notice of readiness is given up to and including 12.00 hours, and at 06.00 hours next working day if notice given during office hours after 12.00 hours. Notice of readiness at loading port to be given to the Shippers named in Box 17 or if not named, to the Charterers or their agents named in Box 18. Notice of readiness at the discharging port to be given to the Receivers or, if not known, to the Charterers or their agents named in Box 19.~~
~~If the loading/discharging berth is not available on the Vessel's arrival at or off the~~ port of loading/discharging, the Vessel shall be entitled to give notice of readiness ~~within ordinary office hours on arrival there, whether in free pratique or not, whether customs cleared or not. Laytime or time on demurrage shall then count as if she were in berth and in all respects ready for loading/discharging provided that the Master warrants that she is in fact ready in all respects. Time used in moving from the place of waiting to the loading/discharging berth shall not count as laytime.~~
~~If, after inspection, the Vessel is found not to be ready in all respects to load/discharge time lost after the discovery thereof until the Vessel is again ready to load/discharge shall not count as laytime.~~
~~Time used before commencement of laytime shall count.~~
* *Indicate* alternative *(a) or* (b) as agreed, *in* Box 16.

**7. Demurrage SEE RIDER CLAUSE 23**

~~Demurrage at the loading and discharging port is payable by the Charterers at the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for any part of a day. Demurrage shall fall due day by day and shall be payable upon receipt of the Owners' invoice.~~
~~In the event the demurrage is not paid in accordance with the above, the Owners shall give the Charterers 96 running hours written notice to rectify the failure. If the demurrage is not paid at the expiration of this time limit and if the vessel is in or at the loading port, the Owners are entitled at any time to terminate the Charter Party and claim damages for any losses caused thereby.~~

**8. Lien Clause**

The Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, dead freight, demmurage, claims for damages and for all other amounts due under this Charter Party including costs of recovering same.

**9. Cancelling Clause**

(a) Deleted.

(b) Should the Owners anticipate that, despite the exercise of due diligence, the Vessel will not be ready to load by the cancelling date, they shall notify the Charterers thereof without delay stating the expected date of the Vessel's readiness to load and asking whether the Charterers will exercise their option of cancelling the Charter Party, or agree to a new cancelling date. Such option must be declared by the Charterers within 48 running hours after the receipt of the Owners' notice. If the Charterers do not exercise their option of cancelling, then this Charter Party shall be deemed to be amended such that the seventh day after the new readiness date stated in the Owners' notification to the Charterers shall be the new cancelling date.

The provisions of sub-clause (b) of this Clause shall operate only once, and in

This document is a computer generated GENCON 1994 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

## PART II
## "Gencon" Charter (As Revised 1922, 1976 and 1994)

case of the Vessel's further delay, the Charterers shall have the option of cancelling the Charter Party as per sub-clause (a) of this Clause.

10. **Bills of Lading**

Bills of Lading shall be presented and signed by the Master as per the "Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter Party, or by the Owners' agents provided written authority has been given by Owners to the agents, a copy of which is to be furnished to the Charterers. The Charterers shall indemnify the Owners against all consequences or liabilities that may arise from the signing of bills of lading as presented to the extent that the terms or contents of such bills of lading impose or result in the imposition of more onerous liabilities upon the Owners than those assumed by the Owners under this Charter Party.

11. **Both-to-Blame Collision Clause**

If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Owners in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Owners against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and setoff, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Owners. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

12. **General Average and New Jason Clause**

General Average shall be adjusted in London unless otherwise agreed in Box 22 according to York-Antwerp Rules 1994 and any subsequent modification thereof. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see Clause 2).

If General Average is to be adjusted in accordance with the law and practice of the United States of America, the following Clause shall apply: "In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Owners are not responsible, by statute, contract or otherwise, the cargo shippers, consignees or the owners of the cargo shall contribute with the Owners in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Owners, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Owners, or their agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Owners before delivery.".

13. **Taxes and Dues Clause**

(a) On Vessel-The Owners shall pay all dues, charges and taxes customarily levied on the Vessel, howsoever the amount thereof may be assessed.

(b) On cargo -The Charterers shall pay all dues, charges, duties and taxes customarily levied on the cargo, howsoever the amount thereof may be assessed.

(c) On freight-Unless otherwise agreed in Box 23, taxes levied on the freight shall be for the Charterers' account.

14. **Agency SEE RIDER CLAUSE 31 (ALL BELOW DELETED)**

~~In every case the Owners shall appoint their own Agent both at the port of loading and the port of discharge.~~

15. **Brokerage**

A brokerage commission at the rate stated in Box 24 on the freight, dead-freight and demurrage earned is due to the party mentioned in Box 24.

In case of non-execution 1/3 of the brokerage on the estimated amount of freight to be paid by the party responsible for such non-execution to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be agreed.

16. **General Strike Clause**

(a) If there is a strike or lockout affecting or preventing the actual loading of the cargo, or any part of it, when the Vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, the Master or the Owners may ask the Charterers to declare, that they agree to reckon the laydays as if there were no strike or lockout. Unless the Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, the Owners shall have the option of cancelling this Charter Party. If part cargo has already been loaded, the Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.

(b) If there is a strike or lockout affecting or preventing the actual discharging of the cargo on or after the Vessel's arrival at or off port of discharge and same has not been settled within 48 hours, the Charterers shall have the option of keeping the Vessel waiting until such strike or lockout is at an end against paying half demurrage after expiration of the time provided for discharging until the strike or lockout terminates and thereafter full demurrage shall be payable until the completion of discharging, or of ordering the Vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the strike or lockout affecting the discharge. On delivery of the cargo at such port, all conditions of this Charter Party and of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance to the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

(c) Except for the obligations described above, neither the Charterers nor the Owners shall be responsible for the consequences of any strikes or lockouts preventing or affecting the actual loading or discharging of the cargo.

17. War Risks ("Voywar 1993")

(1) For the purpose of this Clause, the words:

(a) The "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and

(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all Vessels or imposed selectively against Vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(2) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Cordage, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Cordage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons onboard the Vessel may be exposed, or may be likely to be exposed, to War Risks, the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Cordage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.

(3) The Owners shall not be required to continue to load cargo r any voyage, or to sign Bills of Lading r any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences, or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Cordage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route, the Owners having a lien on the cargo for such expenses and freight.

(4) If at any stage of the voyage after the loading of the cargo commences, it

This document is a computer generated GENCON 1994 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

PART II
"Gencon" Charter (As Revised 1922, 1976 and 1994)

appears that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

(5) The Vessel shall have liberty:-

(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;

(b) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

(d) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

(e) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions;

(f) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route.

(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this Clause anything is done or not done, such shall not be deemed to be a deviation, but shall be considered as due fulfilment of the Contract of Carriage.

**18. General Ice Clause**

*Port of loading*

(a) In the event of the loading port being inaccessible by reason of ice when the Vessel is ready to proceed from her last port or at any time during the voyage or on the Vessel's arrival or in case frost sets in after the Vessel's arrival, the Master for fear of being frozen in is at liberty to leave without cargo, and this Charter Party shall be null and void.

(b) If during loading the Master, for fear of the Vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for the Owners' benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter Party to be forwarded to destination at the Vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Charterers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per this Charter Party.

( ) In case of more than one loading port, and if one or more of the ports are closed by ice, the Master or the Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter Party null and void unless the Charterers agree to load full cargo at the open port.

*Port of discharge*

(a) Should ice prevent the Vessel from reaching port of discharge the Charterers shall have the option of keeping the Vessel waiting until the re-opening of navigation and paying demurrage or of ordering the Vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the impossibility of reaching port of destination.

(b) If during discharging the Master for fear of the Vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

**19. Law and Arbitration (DELETED PARA (b), (c), (d))**

* (a) This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed shall appoint a third arbitrator, the decision of the three-man tribunal thus constituted or any two of them, shall be final. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall be final.

For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25 the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association.

This document is a computer generated GENCON 1994 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

**RIDER CLAUSES TO MV "CLEAN SEAS" / RASHMI METALIKS LTD
CHARTER PARTY DATED 20.01.2009**

**CLAUSE 20**

Freight payment :(one hundred percent ) 100% freight is payable in us dollars to owner's nominated bank account within 3 (three) banking days upon completion of loading and signing/releasing bills of lading marked "freight payable as per c/p" but always before breaking bulk.

In case charterer's require 'freight prepaid' bs/l, then same to be released immediately upon receiving 100 pct freight in owners bank account.

Owners' Bank account details :

BANK OF CHINA TIANJIN OCEAN PLAZA SUB-BRANCH
ADRESS: NO.1-18 OCEAN PLAZA, HEBEI DISTRICT, TIANJIN, CHINA
BANK CODE: 40256
SWIFT: BKCHCNBJ200
ACCOUNT NO: 559049176080930l4
IN FAVOR OF: COSCO BULK CARRIER CO.,LTD

Bills of lading weight to be determined by draft survey. The Master or his nominated agent to sign Congen Bills of Lading to be marked "Freight payable as per Charter Party" or "Freight prepaid" as the case may be.

Full freight is deem earned upon completion of Loading, discountless and non-returnable regardless vessel and/or cargo lost or not lost.

**CLAUSE 21**

Laycan : 0001LT 25th January 2009 to 2400LT 30th January 2009. Notice of readiness at first loadport at Haldia port can be tendered by master through cable or in writing to the agents and/or shipper respectively within office hours i.e between 0900-1700, Monday to Friday and 0900-1200h on sat, Sundays & holidays excluded, on ships arrival 1st sea pilot station and laytime to commence 12 hrs after, unless sooner commence, wheather in port or not , wheather in berth or not, wheather custom cleared or not, wheather in free pratique or not.

Notice of readiness at second loadport at Paradip/Vizag and at discharge port can be tendered by master through cable or in writing to the agents and/or shipper and importers respectively all time day night Sunday holiday including and laytime to commence 12 hrs after, unless sooner commence wheather in port or not, wheather in berth or not, wheather custom cleared or not, wheather in free pratique or not.

(a) Cargo to be loaded at the rate of 6000 mt and 7500 mt per weather working day of 24 consecutive hours sundays holidays included at Haldia and Paradip/Vizag

respectively. load rate is on the basis of 4 hooks/ship's cranes. In case of breakdown of ship's crane's laytime shall be calculated on pro-rata basis the number of cranes. owners may hire shore crane/s in lieu of disabled crane/s at owners cost which case full laytime to count.

(b) Cargo to be discharged at the rate of 12,000 mt per weather working day of 24 consecutive hours sundays holidays included. discharge rate is on the basis of 4 hooks/ship's cranes. in case of breakdown of ships crane/s laytime shall be calculated on pro-rata basis the number of cranes. owners may hire shore crane/s in lieu of disabled crane/s at owners cost which case full laytime to count.

(c) In case of Haldia, if the vessel serves nor after completion of discharge of import cargo and is not sent out to sandheads, time taken for shifting from discharging berth to reberthing at loading berth not to count as laytime.

(d) In case the discharge port is yangtze river port, notice of readiness to be tendered and accepted at changjiangkou (cjk) time used for shifting from CJK to final discharge port(s) such as zhenjiang or jiangyin berth (including changing pilot and limitation for night navigation) shall not be counted as laytime.

(e) Shifting time from anchorage to berth not to count as laytime or time on demurrage.

(f) Time taken for initial draft survey and custom clearance not to count as laytime at both ends provided loading/discharging is affected. time lost in waiting for any draft survey to count as laytime or time on demurrage.

(g) In case loading has to be interrupted due to reason of responsibility of the vessel, such time lost not to count as laytime.

(h) Any shifting expenses due to owner's / vessel's fault on owners account and time not to count even if on demurrage.

(i) First opening and last closing of hatches for all the ports, not to counted as laytime.

(j) Laytime to cease upon completion of discharge unless time lost in waiting for any draft survey.

**CLAUSE 22**

Time not to count even if the vessel is already on demurrage, provided loading / discharging is affected, due to the following reasons :

i) Stoppage time due to breakdown of crane, non power supply or any stoppages due to Owners/vessel's fault

ii) Time taken in shifting from anchorage to berth

iii)Time taken in first opening and last closing of hatch covers if loading / discharging is affected

iv) Time taken for initial draft survey and custom clearance at both ends

v) Any time taken lost due to crew problems and/or defect in or breakdown of cranes and or of vessel, machinery or equipment not to count even if on demurrage, all

time lost till the vessel is in same position not to count even if in on demurrage.

**CLAUSE 23**
**Demurrage/Dispatch:** USD 6500 per day prorata working time saved both ends

Demmurage / Dispatch, at bends to be settled within 15 days after completion of discharge and upon receipt of all relevant discharging documents.

**CLAUSE 24**
Charterers are free to use vessel's cranes during this charter party. Grabs hire on chrtrs account.

Vessel to be suitable for grabs loading/discharging. the Owners to guarantee the working of the ship's gear, cranes to full capacity and the vessel to provide full power to cranes + grabs in accordance with vessel's cranes specification.

**CLAUSE 25**
Owners / Master / Agents to give notice to Charterers / Shippers / receivers, at load port on fixing and then daily and upon sailing from load port, 5/3/2/1 in 12 hrs off discharge port / range. Any event materially affecting the vessel's ETA must be communicated to Charterers.

**CLAUSE 26**
Owners to appoint agents nominated by charterers at loading port, but port disbursement should be competitive and customary and reasonable. Owners' agents at discharge port.

**CLAUSE 27**
Arbitration / General Average if any to be held in London & English Law to apply. LMAA rules for small claim procedures for amounts upto USD 50,000 to apply.

GENCON 1994 arbitration clause to apply.

**CLAUSE 28**

MV CLEAN SEAS
SD BC Geared Bulkcarrier
Built JUN 1995 Flag CAYMAN ISLANDS Class NKK
SDWT 46,640 mt / SDFT 11.62 mtrs
GRT 27,011 / NRT 16,011
L/B : 189.8/31 mtrs TPC 51.49 5H/5H
CAPE : G/B 59,820.4/57,236.7cbm

**RIDER CLAUSES TO MV "CLEAN SEAS" / RASHMI METALIKS LTD**
**CHARTER PARTY DATED 20.01.2009**

Cranes 4 x 30 t Electro hydraulic

SPEED AND CONSUMPTION:
LADEN : ABT 13.50 KN ON ABT 28 MT IFO MAX 380 CST + ABT 0.1 MT MDO
BALLAST : ABT 13.50 KN ON ABT 27 MT IFO MAX 380 CST + ABT 0.1 MT MDO
PORT CONSUMPTION: WORKING: 24 HRS: ABT 5.0 MT IFO AND ABT 0.L MT MDO
IDLE: ABT 3.5 MT IFO AND ABT 0.1 MT MDO
BUNKER SPECS: IFO RMG 380 (ISO 8217:2005 E)
MDO / DMB (ISO 8217:2005 E)
ALL DTLS ABT
CRANE OUTREACH 10.5 MTRS FROM SHIP'S RAILING

++

1) In case vessel do not have grabs, cost of hiring grabs and time taken for fixing of grabs will be on chrtrs account. Owners confirm the vessel is fully suitable for grab loading/discharge.
2) Owners confirm vessel is fully hull & machinery insured, P & I Club covered, classed highest Lloyds or equiv for the whole duration of this charter party. I.S.M. certificated, strengthened for heavy cargoes, steel floored all holds, alternative holds loading ok.
3) Owners confirm that vessel is free of any Maritime Lien or encumbrance.
4) Stowage in unobstructed main holds only.
5) Vessel to be clean and ready to load on arrival.
6) Any time lost due to crew problems and/or defect in or breakdown of crane and or of vessel, machinery or equipment not to count, even if on demurrage, All time lost till the vessel is in same position not to count even if on demurrage.
7) Owners guarantee vessel is fully suitable for carrying bulk iron ore and vessel's gears are suitable for loading bulk iron ore.
8) All cargo holds are guaranteed suitable for grab discharge and available in unobstructed clear main holds only fully suitable for bulldozer discharge but subject to tank top strength permitted.
9) Owners / vessel to comply with all Port requirements
10) Vessel to be always afloat in load port/discharge port/range provided her draft does not exceed the maximum permissible draft of such loading/discharging port(s).
11) Draft limits at Charterer's risk at both ends
12) Extra Insurance, over age premium for vessels over 20 years of age, to be for charterers account.

**CLAUSE 29**

The Charterers shall arrange for a safe loading and safe discharging berth and shall load and discharge raw bulk iron ore fines on board the vessel free of risk and expense to the vessel, but always under the supervision of the Master.

**RIDER CLAUSES TO MV "CLEAN SEAS" / RASHMI METALIKS LTD**
**CHARTER PARTY DATED 20.01.2009**

**CLAUSE 30**
On completion of loading, a Statement of Facts and Mate Receipt shall be made out at the loading port duly signed by Master / Agents of the vessel and the Shippers / Charterers representatives. Similarly at discharging port duly signed by Master / Agents of the vessel and receivers representative.

**CLAUSE 31**
Freight Rate : USD 10.50 Per Metric Ton basis 2/1

**CLAUSE 32**
New Jason Clause, New Both to Blame Collision Clause, PNI Bunker Deviation Clause, General Paramount Clause and York Antwerp Rules 1994 and any subsequent modification thereof are deemed to be incorporated in this Charter Party and bills of Lading.

Owners confirm vessel ISM Certified, BIMCO I.S.M. clause to apply.

**CLAUSE 33**
Loading and discharging shall be done by vessels' gear / cranes, however vessel's crew not to drive ship's gear / grabs. Any time lost due to breakdown of vessel's crane / gear at loading / discharging ports to be deducted from laytime on prorate basis.

Any time lost due to crew problems and/or defect in or breakdown of crane and or of vessel, machinery or equipment not to count, even if on demurrage, All time lost till the vessel is in same position not to count even if on demurrage.

If the vessels derricks / cranes not found to be working to their capacity, then an independent third party assessment to be done to ascertain vessels gear effectiveness / efficiency and laytime computation to be done accordingly.

**CLAUSE 34**
Owners to ensure that cargo of iron ore in bulk so loaded is not contaminated by any cause whatsoever.

**CLAUSE 35**
Any taxes/dues on cargo to be on Charterers account.
Any taxes/dues on vessel/freight to be on Owners account.
All Wharfages, normal and customary port expenses to be for Owners account both ends.

**CLAUSE 36**
Vessel's Light Safety Apparatus / Fire Fighting Apparatus Equipment to be in good working order including fire lines forward and in compliance with current SOLAS regulations in force.

**CLAUSE 37**

**RIDER CLAUSES TO MV "CLEAN SEAS" / RASHMI METALIKS LTD CHARTER PARTY DATED 20.01.2009**

Vessel to be left in sea-worthy trim for shifting between berths.
Shipside tally/survey on Owner's account.
Shoreside tally/survey on Charterers account

**CLAUSE 38**
Vessels holds to be dry/clean and ready to accept Charterers intended cargo but always subject independent surveyor. in case holds not approved by surveyor, time from rejection of holds untill time all holds are passed by the surveyor, not to count as laytime (even if vessel on demurrage).

**CLAUSE 39**
a) The Charterers shall be responsible for damage (fair wear and tear excepted) to any part of the Vessel caused by Stevedores. The Charterers shall be liable for all costs for repairing such damage and for any time lost, which shall be paid in an amount equivalent to the demurrage rate.

(b) The Master or the Owners shall notify the Charterers or their agents and the Stevedores of any damage as soon as reasonably possible, failing which the Charterers shall not be responsible.

(c) Stevedore damage affecting seaworthiness shall be repaired without any delay before the Vessel sails from the port where such damage was caused or discovered. Stevedore damage affecting the Vessel's trading capabilities shall be repaired before leaving the last port of discharge, failing which the Charterers shall be liable for resulting losses. All other damage which is not repaired before leaving the last port of discharge shall be repaired by the Owners and settled by the Charterers on receipt of Owners' supported invoice.

**CLAUSE 40**

In the absence of original bills of lading upon vessel arrival at discharge port, charterers have the option to issue single simple letter of indemnity. in owners favour as per owner P&I club wording based on which owners shall issue delivery order. Charterer's to attach copy of bills of lading alongwith letter of indemnity for owners approvals.

CLAUSE 41
Intermediate hatch opening / closing to be on Owners account.

**CLAUSE 42**
Vessel always proceed from Load port to Discharge port in normal geographical shipping route.

**RIDER CLAUSES TO MV "CLEAN SEAS" / RASHMI METALIKS LTD**
**CHARTER PARTY DATED 20.01.2009**

CLASUE 43

Owners guarantee that vessel has full insurance cover for hull and machinery and full P&I covered and such will be maintained until completion of discharging at discharging port, vessel is classed with Lloyds Register of Shipping or equiv.

Charterers

Owners

# EXHIBIT B

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

BETWEEN:

**COSCO BULK CARRIER CO LTD**

(CLAIMANTS/OWNERS)

AND

**RASHMI METALIKS LTD**

(RESPONDENTS/CHARTERERS)

**M.V. "CLEAN SEAS"**
(C/P 21 JANUARY 2009)

---

# AWARD

---

WHEREAS:

(A) By a voyage charterparty dated 21 January 2009 on an amended (1994) Gencon form with rider clauses ("the charter") Cosco Bulk Carrier Co Ltd ("the Claimants") as Disponent Owners chartered the m.v. "Clean Seas" to Rashmi Metaliks Ltd ("the Respondents") for a voyage from "*1/2SB ISP always afloat always accessible HALDIA+1/2SB ISP always afloat always accessible Paradip/Vizag, east coast of India in Charterers option*" to "*1/2 Safe Berth 1 Safe Port always afloat always accessible, any main port China, including Yangtze river port*" upon the terms and conditions more fully set out in the charter.

(B) By clause 25 of part 1 of the charter it was provided:-

> "*Law and Arbitration (state 19(a). 19(b) or 19(c) of Cl. 19 if 19(c) agreed also state Place of Arbitration) (if not filled in 19(a) shall apply) (CL19) SEE CLAUSE 27*".

By Clause 27 of the rider clauses to the charter it was provided:-

> "*Gencon 1994 arbitration clause to apply*".

By clause 19(a) in part II of the charter it was provided:-

> "*Law and Arbitration (DELETED PARA (b), (c), (d))*
> *(a) This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of this Charter Party shall be referred to*

*arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed shall appoint a third arbitrator, the decision of the three-man tribunal thus constituted or any two of them, shall be final. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days, failing which the decision of the single arbitrator appointed shall be final".*

(C) A dispute arose between the parties arising out of the charter, the Claimants claiming US$144,070.15 demurrage from the Respondents. The Respondents did not deny liability but declined to pay, requesting a discount of 50%.

(D) For the determination of the dispute, the Claimants appointed me, the undersigned John Colin Sheppard of 43 Park Road, Chiswick, London, W4 3EY, as the arbitrator appointed by them. The Respondents, having been informed of my nomination, failed to appoint an arbitrator in accordance with the provisions of clause 19(a) of part II of the charter, and I thereupon assumed the status as the single arbitrator whose decision would be final.

(E) The Claimants served Claim Submissions with supporting documents. The Respondents, despite first an Order and then a Final and Peremptory Order, failed to serve any submissions.

(F) The seat of this arbitration is London, England.

**NOW I**, the said John Colin Sheppard, having studied the submissions and documents presented to me and having conscientiously considered the dispute do **HEREBY MAKE, ISSUE AND PUBLISH** this my Award as follows:-

1. **I FIND AND HOLD** that the Claimants' claim succeeds.

2. **I THEREFORE DIRECT** that the Respondents shall forthwith pay to the Claimants the sum of US$144,070.15 (United States dollars one hundred and forty four thousand and seventy dollars and fifteen cents) together with interest thereon at the rate of 3.25% per annum or pro rata compounded with three monthly rests from 4 April 2009 until payment.

3. **I FURTHER DIRECT** that the Respondents shall bear and pay their own and the Claimants' recoverable costs of this reference insofar as they relate to the matters determined by this my Award which I hereby assess in the sum of US$8,780.00

together with interest on the said costs at the rate of 2.5% per annum, compounded with three monthly rests from the date of this Award until payment of the said costs.

4. **I FURTHER DIRECT** that the Respondents shall pay my fees and expenses of this, my Award of £2000.00 **PROVIDED** that if, in the first instance, the Claimants shall have paid any amount in respect of my fees and expenses, they shall be entitled to an immediate refund from the Respondents of the sum so paid together with interest thereon at 2.5% per annum compounded with 3 monthly rests from the date of the Claimants' payment until reimbursement by the Respondents.

5. **I DECLARE** that this Award is **FINAL** as to matters hereby determined and **I RESERVE JURISDICTION** to myself to make a further Award or Awards as may be appropriate in respect of all outstanding disputes between the parties.

Dated in London this 3rd day of July 2009.

John Colin Sheppard

Witness

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

BETWEEN:

**COSCO BULK CARRIER CO LTD**

(CLAIMANTS/OWNERS)

AND

**RASHMI METALIKS LTD**

(RESPONDENTS/CHARTERERS)

**M.V. "CLEAN SEAS"**

(C/P 21 JANUARY 2009)

---

**AWARD**

---

# EXHIBIT C

借 : 9997878999101014.

中国银行收付清算系统 临时存欠借方传票

2009年03月09日

发送柜组: 78
货币金额: USD 456,550.48
发送柜组: 复核

接收柜组: 78
他方编号: [redacted]
经办

我方编号: [redacted]
他方编号:
发报日期: 2009-03-06
发报行号: BKCHUS33XXX BANK OF CHINA NEW YORK
收报行号: BKCHCNBJ200 BANK OF CHINA TIANJIN BR
发报行编号: [redacted]
起息日: 2009-03-06
帐户行57:

报文类型: MT103

相关编号:
金 额: USD 456,550.48

收款人58/59: [redacted] D [redacted] *COSCO BULK CARRIER CO LT

收款人译文: [redacted] COSCO BULK CARRIER CO LTD

付款人50: [redacted] **RASHMI METALIKS LTD 39 SHAKESPEARE**SARANI KOLKATA
汇款行52: [redacted] *STATE BANK OF INDIA 7502**COMMERCIAL ... CUT
TA**ARA GROUP HOUSE P B 9191**24 PARK STREET CALCUTTA 70
0 016 (IN)
附 言70: FREIGHT AND DEMURRAGE**CHARGES
附言译文: FREIGHT AND DEMURRAGE CHARGES

费用负担71A: BEN
收费货币金额71F: USD 10.00

收报行收费71G: 0.00
备 注72: /ACC/BOC NY LS COMM N CHGS USD 10.**//00 RECVD VIA STATE BANK OF INDIA
备 注80:

指示代码23E:

接收柜组: 复核 经办

2009.03.09 转 讫 (7808)